UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID BELANGER,<br>Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO.<br>3:07-cv-52 (VLB) |
| CITY OF HARTFORD AND<br>GARTH PERRI,<br>Defendants. | : : : : | June 19, 2008 |

**MEMORANDUM OF DECISION AND ORDER DENYING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #24] AND DENYING THE DEFENDANTS' MOTION TO STRIKE [DOC. #28]**

The plaintiff, David Belanger, brought this excessive force case against the defendants, the City of Hartford ("the city") and police officer Garth Perri, asserting claims of assault, negligence, recklessness and/or wanton misconduct, and violation of his Constitutional rights pursuant to 42 U.S.C. § 1983 against Perri, and indemnification against the city pursuant to Connecticut General Statutes § 7-465. Presently pending before the court are the defendants' motion for summary judgment and motion to strike certain portions Belanger's affidavit offered in opposition to the motion for summary judgment. For the reasons set forth below, the defendants' motions are DENIED.

I. Facts

The following facts relevant to the defendants' motion for summary judgment are undisputed unless otherwise noted. On the night of December 23, 2004, Belanger, Chris Mason, and Ryan Krawfsky went to the Brickyard Café, a

1

bar in downtown Hartford, Connecticut. The trio parked the car in an outdoor lot across the street from the bar. After leaving the bar, the friends retrieved the car from the parking lot. Krawfsky drove. Mason sat in the front passenger's seat. Belanger sat in the back seat on the passenger's side. While waiting in a line of cars to exit the lot, Krawfsky's car was bumped from behind by another vehicle, instigating a confrontation.

Krawfsky exited his car first, approached the other car, and began arguing with and then punching the driver, Edgar Diaz, through the open window. Krawfsky then pulled Diaz out of the car and fought with him on the ground. Mason exited Krawfsky's car second. He approached the passenger's side of Diaz's car and began punching the front seat passenger, Jesus Aguilera, through the front passenger's side window. Belanger then exited the car and approached the second vehicle. When the altercation began, Perri was standing down the block from the parking lot monitoring traffic flow. Upon hearing the altercation, he and two other officers approached to intervene.

At this point, Belanger and Perri's versions of the facts diverge. Belanger claims that he followed Mason to the passenger's side of Diaz's car and tried to restrain Mason from punching Aguilera. He stepped between Mason and Aguilera, placing his left hand on Aguilera's chest and his right hand on Mason's shoulder. Belanger felt Mason drop to the ground with his right hand that was on Mason's shoulder. Belanger rotated his upper torso to the right to see what caused Mason to fall. At that point, Perri struck Belanger in the face with his

baton. Belanger never saw Perri.

Belanger claims the rear bumper of Krawfsky's car and the front bumper of Diaz's car were pressed together allowing no room to walk between the vehicles. He did not hear any verbal warnings from the police. He did not feel any police officer make any physical contact with him prior to being struck in the face.

Perri claims that when he first saw the altercation, Belanger and Krawfsky were on the driver's side of Diaz's car and only Mason was on the passenger's side. Perri first approached Mason on the passenger's side and pushed him to the ground. Perri observed Belanger and Krawfsky on the driver's side first standing side by side punching Diaz through the window and later kicking him in the head while on the ground. After pushing Mason down, Perri observed his fellow officers fighting with Krawfsky while Belanger continued kicking Diaz in the head. At this point, Perri alleges having a clear passage of about two feet of space between the front of Diaz's car and the back of Krawfsky's car. He walked directly between the vehicles and approached Belanger. Perri identified himself as a police officer and issued orders to stop. Belanger ignored the verbal commands. Fearing for Diaz's safety, Perri struck Belanger in the left shoulder or biceps area with his baton. Belanger turned towards Perri with clenched fists and his knees bent in a fighter's stance. Perri again swung his baton at shoulder height. Belanger either stumbled over Diaz or ducked, and, as a result, was struck in the left side of the face. Perri also notes that at some point one of the other officers deployed O.C. - "pepper" - spray, affecting his breathing and

burning his eyes.  Belanger suffered a detached retina, requiring surgery.

On January 11, 2007, Belanger commenced this action against Perri and the city.  [Doc. #1]  On December 17, 2007, the defendants moved for summary judgment on all claims.  [Doc. #24]  Belanger filed his opposition to that motion on January 7, 2008, including an affidavit in support of his opposition.  [Docs. #25, 26]  On January 22, 2008, the defendants moved to strike certain paragraphs of Belanger's affidavit.  [Doc. #28]

## II.  Motion to Strike

The defendants' motion to strike seeks to preclude portions of Belanger's affidavit that mention Perri striking Belanger's face because Belanger testified at his deposition that he never saw Perri.  The motion is DENIED for two reasons.  First, Belanger's affidavit describes the circumstances surrounding the baton strike and not Perri's actions themselves.  Belanger does not attempt to describe Perri's physical characteristics while swinging the baton, only the fact that Perri struck him.  There is no statement in the affidavit about Perri's posture, form, stance, facial expression or demeanor, which Belanger admittedly did not see.  Second, Perri admits striking Belanger in the face.

The court notes that the disposition of the motion to strike has no bearing on the outcome of the motion for summary judgment.  The facts asserted by the defendants in their own affidavits and exhibits are both material and disputed, thereby warranting denial of the motion for summary judgment for the reasons stated below.

### III. Motion for Summary Judgment

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the

motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

### A. 42 U.S.C. § 1983

Belanger claims Perri violated his Constitutional rights as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Perri asserts in the motion for summary judgment that he is shielded from liability based on qualified immunity.

"The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). "This is a doctrine that seeks to balance the twin facts that civil actions for damages may 'offer the only realistic avenue for vindication of constitutional

6

guarantees,' and that such suits nevertheless 'can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" Papineau v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).

District Courts utilize a two part inquiry to determine when qualified immunity bars a suit against government officials. "[T]he court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right . . . the court must then consider whether the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id.

As to the first part of the court's inquiry, although Belanger asserts violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, he can only proceed on a claim of excessive force under the Fourth Amendment. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting U.S. Const. Amend. IV) ("*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

7

should be analyzed under the Fourth Amendment and its 'reasonableness' standard" (emphasis in original)).

The second part of the court's inquiry focuses on the reasonableness of Perri's actions. "Summary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003) (internal quotation omitted). An officer's actions are objectively reasonable if "officers of reasonable competence could disagree on the legality of the defendants' actions." Ford v. Moore, 237 F.3d 156, 162 (2d Cir 2001).

In the instant case, there are several genuine issues of material fact that preclude the court granting summary judgment based on qualified immunity. The parties have provided conflicting evidence of where Belanger and Perri were located; the nature of Belanger's involvement in the altercation; whether Perri communicated a verbal warning to Belanger; and whether physical force was reasonable and, if so, what degree of force was reasonable. When viewed in the light most favorable to Belanger, as the court must, a reasonable jury could find that Perri, without any warning, struck Belanger in the face with his baton while Belanger's back was turned and he was attempting to break up a fight. A reasonable police officer should know that swinging a baton at an individual's

face while they are facing away from the officer without prior warning would constitute a violation of that individual's right to be free from excessive force. In light of the aforementioned issues of material fact, Perri's motion for summary judgment as to the section 1983 excessive force claim based on qualified immunity is DENIED.

## B. State Law Claims

Belanger asserts state law claims of negligence, recklessness and/or wanton misconduct, and assault against Perri, and indemnity from the city. Perri seeks summary judgment as to all state law claims based on statutory immunity. The city seeks summary judgment on the indemnity claim based solely on the insufficiency of the claims against Perri, not on the basis of sovereign immunity or an argument that Connecticut General Statutes § 7-465 does not constitute a waiver of sovereign immunity or create a third-party right of action against a municipality.

### 1. Conn. Gen. Stat. § 52-557n

Connecticut General Statutes § 52-557n confers immunity from suit on public officials for certain activities. "Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts." Mulligan v. Rioux, 229 Conn. 716, 727 (Conn. 1994). Governmental acts "are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature," whereas ministerial acts "refer to a duty which is to be performed in a prescribed manner without the

exercise of judgment or discretion." Spears v. Garcia, 263 Conn. 22, 36 (Conn. 2003).

The manner in which a police officer makes an arrest fits within the framework of the day to day discretion exercised by police officers. Galindez v. Miller, 285 F. Supp. 2d 190, 195 (D. Conn. 2003). Section 52-557n applies to the case at hand.

There are three exceptions to the governmental immunity for discretionary acts conferred by section 52-557n: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm[;] second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws[;] and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Spears, 263 Conn. at 36.

## I. Negligence

Belanger asserts that the identifiable person-imminent harm exception to governmental immunity applies here. Perri argues that the standard language courts use to describe the identifiable person-imminent harm exception uses the term "failure to act." Since Perri's baton strike was an affirmative action, as opposed to a failure to act, the exception cannot apply. He cites no authority for such a narrow reading of the exception other than quoting the standard language.

The Connecticut Supreme Court has laid out a three part test for the identifiable person-imminent harm exception to apply: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Doe v. Petersen, 279 Conn. 607, 616 (Conn. 2006). Notably, the third part of the test refers to an official's "conduct" and does not specify that the officer must have failed to act. That court has also articulated the policy underlying the exception that the harm be so imminent as to create a duty for the officer to act with due care. See Fleming v. City of Bridgeport, 284 Conn. 502, 533-35 (Conn. 2007).

Courts in this district have applied the identifiable person-imminent harm exception in the context of excessive force claims based on affirmative acts where the harm to the individual is so foreseeable as to create just such a duty of care. See Galindez, 285 F. Supp. 2d at 195; Carey v. Maloney, 480 F. Supp. 2d 548, 560 (D. Conn. 2007); Taylor v. City of Middletown, 436 F. Supp. 2d 377, 388-89 (D. Conn. 2006); Holemen v. City of New London, 330 F. Supp. 2d 99, 119 (D. Conn. 2004) (reversed on other grounds); Keeney v. City of New London, 196 F. Supp. 2d 190, 202 (D. Conn. 2002).

In the current case, Belanger was clearly an identifiable victim to Perri as he purposefully swung his baton at Belanger. Likewise, viewing the facts in a light most favorable to Belanger, he was subject to imminent harm from a baton blow to the face without warning. The identifiable person-imminent harm exception applies to Belanger's claim of negligence and the motion for summary

11

**judgment must be DENIED.¹**

### ii. Recklessness and/or Wanton Misconduct

**Perri seeks summary judgment as to the recklessness and/or wanton misconduct claim because the facts on the record cannot meet the legal standard for the third exception to section 52-557n's immunity. "In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. Such conduct is more than negligence, more than gross negligence. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others" Elliot v. City of Waterbury, 245 Conn. 385, 414 (1998) (internal quotations omitted).**

**For the reasons articulated above, there are issues of material fact regarding the nature of Perri's actions that preclude this court from determining the severity of those actions at the summary judgment phase. The motion is DENIED as to Belanger's recklessness and/or wanton misconduct claim.**

### 2. Conn. Gen. Stat. § 53a-22

**Perri seeks summary judgment as to Belanger's assault claim because Connecticut General Statutes § 53a-22 specifically authorized the type of force he used to subdue Belanger. Section 53a-22 authorizes a police officer to use**

---

¹**Even if the court accepted Perri's limited reading of the identifiable person-imminent harm exception, the motion for summary judgment would still be denied. There are disputed issues of fact as to the level of verbal or physical warning or notice Perri provided before swinging his baton, if any, that could be viewed by a jury as a failure to act.**

physical force "to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest . . . of a person whom he or she reasonably believes to have committed an offense . . . ; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest." Conn. Gen Stat. § 53a-22(b). As noted above, there are genuine issues of material fact regarding the reasonableness of the force Perri used against Belanger. See Keeney, 196 F. Supp. 2d at 202. As such, the motion for summary judgment must be DENIED as to the assault claim.

### 3. Conn. Gen. Stat. § 7-465

Belanger's claims against the city pursuant to Connecticut General Statutes § 7-465 merely seek indemnity from the city for any liability attributable to Perri. That statute requires a city to indemnify all liabilities imposed upon a municipal employee for infringement of any person's civil rights if the employee was acting in the performance of his duties and within the scope of his employment. Conn. Gen. Stat. §7-465(a). The city does not assert that the statute does not apply to this case. Therefore, since the motion to for summary judgment is denied as to the claims against Perri, the motion must also be DENIED as to the claims of indemnity against the city.

### IV. Conclusion

Based on the above reasoning, the defendants' motions for summary judgment and to strike are DENIED. There are multiple issues of material fact, the resolution of which require the intervention of a trier of fact. A separate

scheduling order shall issue placing this case on the court's trial calendar.

IT IS SO ORDERED.

/s/

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 19, 2008.